UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIAN CRUZ,

                                  Case No.

        Plaintiff,               Hon.

v.

CITY OF DETROIT, a municipal corporation,
and JOHN DOE OFFICERS 1-5, in their individual
capacities,

        Defendants.

---

Amanda M. Ghannam (P83065)
Nicholas Roumel (P37056)
Nacht & Roumel, P.C.
2921 E. Jefferson Ave., Ste. 102
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com
nroumel@nachtlaw.com
*Co-Counsel for Plaintiff*

Sean Riddell (P81302)
The Riddell Law Firm PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
*Co-Counsel for Plaintiff*

---

**<u>PLAINTIFF'S COMPLAINT AND JURY DEMAND</u>**

> There exists a companion case related to this action, *Rohr v. City of Detroit et al.,* 2:20-cv-11697, pending before the Hon. Laurie J. Michelson.

Plaintiff Julian Cruz, through his attorneys, Nacht & Roumel, P.C. and The Riddell Law Firm PLLC, brings this civil rights action against Defendants, the City of Detroit, a municipal corporation, and John Doe Officers 1–5, in their individual capacities, and hereby alleges as follows:

## INTRODUCTION

Like thousands of people across the nation, Plaintiff Julian Cruz attended a Black Lives Matter protest after the murder of George Floyd at the hands of Minneapolis police officers. Like hundreds of people who peacefully demonstrated in the City of Detroit, Mr. Cruz was met with brutal and excessive violence force by Detroit police officers in response to his mere presence at such a demonstration.

On May 30, 2020, Mr. Cruz attended a demonstration in the City of Detroit. As Mr. Cruz lawfully attempted to record police activity using his cell phone, a Detroit police officers smacked his phone out of his hand. When Mr. Cruz stooped to retrieve his phone, Detroit police officers swarmed around him, dragged him across the intersection of Third Street and Michigan Avenue, and proceeded to beat, kick, and punch Mr. Cruz. The officers broke Mr. Cruz's foot, tore cartilage from his ear, lacerated his scalp, and left him heavily bruised all over his body. After his release from police custody, Mr. Cruz required extensive medical treatment, was

unable to continue working in construction due to his injuries, and has suffered from debilitating fear and anxiety.

Plaintiff Julian Cruz now brings this suit alleging violations of his civil rights under the First and Fourth Amendments to the U.S. Constitution, the Michigan Constitution, 42 U.S.C. 1983, and 42 U.S.C. 1981.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Julian Cruz is an individual currently residing in Chicago, Illinois.

2.     At the time of the events giving rise to this lawsuit, Mr. Cruz was a resident of Farmington Hills, Michigan.

3.     Defendant City of Detroit is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan. It is, and has been at all relevant times, authorized by law to maintain and operate the Detroit Police Department ("DPD"). Acting through its agents, including but not limited to the Mayor, the Chief of Police, its supervisors, operating officers, Boards, Commissions, Committees, and its final policymakers, Defendant City, at all times relevant hereto, established, promulgated, and implemented the policies, customs, and practices of the DPD, with regard to hiring, training, supervision, and discipline of DPD employees.

4.      Defendants John Doe Officers 1–5 are, or were at all times relevant hereto, law enforcement officers employed by Defendant City of Detroit. These Defendant Officers cannot be identified at this time, but will be identified throughout the course of discovery. Plaintiff will amend his complaint as the John Doe Officers' names are ascertained.[1] The John Doe Officers are sued in their individual capacities.

5.      At all relevant times, each Defendant Officer acted under color of laws, statutes, ordinances, policies, practices, customs, and usages of the State of Michigan, City of Detroit, and Detroit Police Department.

6.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. 1331 (federal question jurisdiction) and 28 U.S.C. 1343 (civil rights jurisdiction).

7.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) as the events giving rise to this Complaint occurred in Wayne County, Michigan, within this judicial district.

## **GENERAL ALLEGATIONS**

8.      Across the nation, the summer of 2020 saw widespread demonstrations against unjustified police violence and systemic racism after the murder of George Floyd at the hands of then-Minneapolis police officer Derek Chauvin.

---

[1] Plaintiff is unable to ascertain the exact number of Doe Officers involved, and thus reserves the right to name additional Doe Officers as more information is obtained through discovery.

9.     Such protests began in the City of Detroit on May 29, 2020, and continued throughout the summer and into fall on a near-daily basis.

10.    Hundreds of residents of the City of Detroit and surrounding area participated in the nonviolent demonstrations. Attendees acted safely to exercise their constitutional rights during a global pandemic by wearing masks and providing hand sanitizer. Organizers and volunteers also acted to ensure participants' safety by providing first aid supplies, snacks, and water as people marched throughout the streets in the summer heat.

11.    Despite the peaceful nature of the demonstrations, the City of Detroit, through its police department, immediately and repeatedly responded to the exercise of Black Lives Matter demonstrators' First Amendment rights with pre-meditated and indiscriminate violence, brutality, and excessive force, displaying a wanton disregard for demonstrators' constitutional rights.

12.    Plaintiff, Julian Cruz, was one such demonstrator.

13.    Mr. Cruz attended a protest on May 30, 2020, in downtown Detroit.

14.    Mr. Cruz did not commit any unlawful acts, including acts of violence or property damage, during his attendance at the demonstration.

15.    At approximately 10:30 p.m., police officers outfitted in riot gear and accompanied by armored vehicles formed a line, advanced upon demonstrators, and began to use excessive and unnecessary force, including pushing, shoving, and

beating demonstrators with their batons, shields, and fists, and launching tear gas canisters at demonstrators.

16.     Mr. Cruz began to use his cell phone to record the police activity.

17.     A Detroit police officer (Defendant John Doe 1) charged towards Mr. Cruz and smacked his phone out of his hand.

18.     As Mr. Cruz instinctively stooped to retrieve his cell phone, additional Detroit police officers (Defendants John Doe 2-5) swarmed around Mr. Cruz, threw him to the ground, and began to club, kick, and punch him repeatedly.

19.     Portions of the attack were captured on video by a bystander[2] and by WXYZ-TV Detroit, Channel 7.[3]

20.     The Defendant Doe officers broke Mr. Cruz's right foot, tore cartilage from his ear, and left him with lacerations to his scalp and bruises all over his body.

21.     When they finished taking turns beating Mr. Cruz, the officers forced Mr. Cruz to his feet and attempted to make him walk to a nearby bus.

22.     Mr. Cruz pled with the officers that he could not walk because his foot appeared broken and he was in too much pain.

---

[2] See https://twitter.com/LisaLi_intheD/status/1267672777466748929, last accessed September 28, 2022. Mr. Cruz is wearing a dark gray or black shirt and brown khaki pants. Mr. Cruz and the police are visible directly underneath the street sign denoting the intersection of Michigan Avenue and Third Street.

[3] See https://www.youtube.com/watch?v=wfGrSiqw0kg, last accessed September 28, 2022. A portion of the attack on Mr. Cruz is shown at the 2:00 mark. Mr. Cruz and the police are visible directly underneath the street sign denoting the intersection of Michigan Avenue and Third Street.

23.     The officers carried Mr. Cruz to the nearby bus and placed him inside with other demonstrators and legal observers who had been detained and/or arrested.

24.     Others present on the bus observed that Mr. Cruz was bleeding from several lacerations on his head, couldn't walk, and appeared dazed and disoriented.

25.     The officers forced Mr. Cruz to wait on the bus for a prolonged period of time without medical attention.

26.     Other detainees present on the bus were also bruised, bleeding, and in severe pain due to injuries inflicted by Detroit police officers.

27.     Others present on the bus repeatedly called for medical attention for the injured demonstrators; eventually, medical personnel arrived on the scene.

28.     Officers transported Mr. Cruz to an ambulance, where medical personnel began to treat his injuries.

29.     Medical personnel asked a police officer if he had any charges for Mr. Cruz.

30.     The officer told the medical personnel that Mr. Cruz was free to go.

31.     Before permitting him to exit the ambulance and make his way home, the medical personnel and/or police required Mr. Cruz to electronically sign a document.

32.     Mr. Cruz was forced to limp on one foot out of the ambulance and back towards the area near Michigan Avenue where he had been seized and attacked.

33.     Mr. Cruz was barely able to walk without support and required the assistance of "good Samaritan" bystanders to walk, retrieve his phone, and secure transport home.

34.     As Mr. Cruz and one such good Samaritan approached the area where Mr. Cruz had been attacked, a Detroit police officer, apparently recognizing Mr. Cruz, shouted something to the effect of "You ain't talkin' shit no more, are you?!"

35.     Bystanders assisted Mr. Cruz in searching for his phone and driving him home.

36.     Mr. Cruz was transported to his family home and from there to Beaumont Hospital's Farmington Hills location, where he was treated overnight for his injuries.

37.     Mr. Cruz's broken foot never fully healed.

38.     Because of the injury to his foot, Mr. Cruz was forced to leave his former occupation as a builder/roofer in the construction industry.

39.     As a direct result of the use of excessive force upon him by Defendants Does 1-5, Mr. Cruz suffered and will continue to suffer damages, including and not limited to medical expenses, loss of work and earning capacity, severe physical pain, fear, anxiety, flashbacks, and other forms of mental anguish and emotional distress.

40.     Mr. Cruz's injuries were documented in the following photographs:









## COUNT I
**Fourth/Fourteenth Amendment of the United States Constitution:**
**Unreasonable and Excessive Force**
**42 U.S.C. 1983**
**as to Defendant Officers Does 1-5**

41.    Plaintiff incorporates the foregoing paragraphs by reference.

42.    At all relevant times, Defendants Does 1-5 acted under color of state law.

43.    The conduct of Defendants Does 1-5 described herein violated Plaintiff's clearly established rights pursuant to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive and arbitrary force under color of law.

44.    The arbitrary and indiscriminate use of force by Defendants Does 1-5 against Plaintiff was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under the Fourth Amendment.

45.    Plaintiff did not pose any reasonable immediate threat to the safety of any officer nor have Defendants provided sufficient evidence asserting so.

46.    Defendants Does 1-5 were not met with split second decisions, as they were present on the scene observing for a substantial period of time prior to deploying unreasonable and excessive force, and Defendants Doe 1-5 instigated the use of force upon Plaintiff without any provocation or basis for doing so, other than

to retaliate against and punish Plaintiff for engaging in demonstrations with which they disagreed.

47.     Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

48.     The constitutional rights that Defendants Does 1-5 violated were clearly established at the time that the violations occurred and any reasonable individual in the position of Defendants Does 1-5 would have understood that their conduct violated Plaintiff's constitutional rights.

49.     Defendants are therefore not entitled to qualified immunity.

50.     As a result of Defendants' conduct, Plaintiff has suffered damages as described in this complaint.

## COUNT II
### Article I, Section 11 of the Michigan Constitution of 1963:
### Unreasonable and Excessive Force
### as to Defendant Officers Does 1-5

51.     Plaintiff incorporates the foregoing paragraphs by reference.

52.     At all relevant times, Defendants Does 1-5 acted under color of state law.

53.     The conduct of Defendants Does 1-5 violated Plaintiff's clearly established rights pursuant to Article I, Section 11 of the Michigan Constitution of 1963 to be free from unreasonable, excessive and arbitrary force under color of law.

54.     The arbitrary and indiscriminate use of force by Defendants Does 1-5 against Plaintiff was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under Article I, Section 11.

55.     Plaintiff did not pose any reasonable immediate threat to the safety of any officer nor have Defendants provided sufficient evidence asserting so.

56.     Defendants Does 1-5 were not met with split second decisions, as they were present on the scene observing for a substantial period of time prior to deploying unreasonable and excessive force, and Defendants Doe 1-5 instigated the use of force upon Plaintiff without any provocation or basis for doing so, other than to retaliate against and punish Plaintiff for engaging in demonstrations with which they disagreed.

57.     Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

58.     The constitutional rights that Defendants Does 1-5 violated were clearly established at the time that the violations occurred and any reasonable individual in the position of Defendants Does 1-5 would have understood that their conduct violated Plaintiff's constitutional rights.

59.     As a result of Defendants' conduct, Plaintiff has suffered damages as described in this complaint.

## COUNT III
**Fourth/Fourteenth Amendment of the United States Constitution:**

**False Imprisonment/Confinement in Unreasonable Conditions/Failure to Provide Medical Attention**
**42 U.S.C. 1983**
**as to Defendant Officers Does 1-5**

60.     Plaintiff incorporates the foregoing paragraphs by reference herein.

61.     At all relevant times, Defendants Does 1-5 acted under color of law.

62.     After detaining and seizing Plaintiff, Defendants Does 1-5 placed Plaintiff on a bus for a prolonged period of time.

63.     The conditions of confinement under which Plaintiff was held violated his rights to due process of the law, were knowingly and objectively unreasonable, and were punitive, with no rational relationship to any lawful purpose for which Plaintiff was being detained.

64.     Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's health, safety, medical needs, and constitutional rights.

65.     The constitutional rights that Defendants Does 1-5 violated were clearly established at the time that the violations occurred and any reasonable individual in Defendants' position would have understood that their conduct violated those rights.

66.     Defendants are therefore not entitled to qualified immunity.

67.     As a result of Defendants' conduct, Plaintiff has suffered damages as described in this complaint.

<u>**COUNT IV**</u>
**First Amendment of the United states Constitution:**
**Free Speech and Assembly**
**42 U.S.C. 1983**
**as to Defendant City of Detroit and Defendant Does 1-5**

68.     Plaintiff incorporates the foregoing paragraphs by reference herein.

69.     At all relevant times, Defendants Does 1-5 acted under color of state law pursuant to the municipal policies, practices, and customs of the City of Detroit.

70.     Plaintiff did not commit any unlawful acts, including acts of violence or property damage.

71.     Defendants Does 1-5 never suspected Plaintiff of committing any unlawful acts, and these Defendants lacked probable cause to attack or detain Plaintiff.

72.     Defendant City of Detroit's policy, practice, and custom of utilizing excessive force against demonstrators for the purpose of punishing and retaliating against demonstrators for engaging in protests against police brutality, and of authorizing the use of force described herein to control and suppress demonstrations, are content-based restrictions and prior restraints of speech, and these policies, practices, and customs are not a reasonable regulations of the time, place, or manner of Plaintiff's First Amendment protected activity.

17

73.    The above-described conduct of Defendants Does 1-5 violated Plaintiff's rights to freedom of speech, assembly, and association under the First Amendment to the United States Constitution.

74.    In dispersing such assemblies, Defendants Doe 1-5 instigated violence and excessive force despite the peaceful nature of Plaintiff's actions.

75.    The conduct of Defendants Doe 1-5 would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the First Amendment

76.    Defendant City of Detroit maintains official policies, practices, and customs of instigating violence against protestors using the types of force described herein to control and suppress demonstrations, and these policies, practices, and customs are not a reasonable regulation of the time, place, or manner of Plaintiff's First Amendment protected activity.

77.    The actions of Defendants Does 1-5, which were undertaken pursuant to the policies, practices, and customs of the City of Detroit, were neither content neutral nor viewpoint neutral, and were in fact directed against Black Lives Matter protestors, including Plaintiff, because of the content of their speech activities.

78.    The City's targeted and coordinated response to the Black Lives Matter demonstrations, including the official policy, practice, and custom of instigating violence against peaceful protestors, and utilizing excessive force against protestors

in order to send a message that their protests were not welcome in Detroit, is neither content nor viewpoint neutral, and is in fact based on the City's and DPD's bias towards and disagreement with the content and viewpoints expressed in the speech activities of the demonstrators', including Plaintiff's, speech activities.

79.     For example, then-DPD Chief James Craig – a frequent guest and pundit on Fox News – has publicly stated, falsely and without any factual basis, that he believes the BLM demonstrations are "coordinated…planned, and not to mention…financed," and that the demonstrators were "carrying out a mission" that "certainly is not about Breonna Taylor; [and not] about George Floyd," but instead "a Marxist ideology."[4]

80.     Craig further expressed his opposition to the content of the demonstrators' speech activities, stating: "I can tell you that this group that's marching, like so many across the country, the anarchist factions of these groups are promoting violence and attacks on police officers. They don't speak for Detroit," he told Townhall. "And I recognize that it's not all of the protestors it's the core, that little small group, that really tries to create violence."[5]

---

[4] See https://www.metrotimes.com/detroit/chief-craig-makes-baseless-claims-about-marxist-protesters-on-fox-news/Content?oid=25410161

[5] See https://townhall.com/tipsheet/bethbaumann/2020/09/17/exclusive-detroit-police-chief-james-craig-says-anti-law-enforcement-sentiment-i-n2576428?fbclid=IwAR2mOkdNjolDKkf9zrm0fkBd4dE8XNfKFCnjFvNy6TCZynAotR9ll0qw2Do

81.     With regard to BLM demonstrations, Craig has taken a public position of Us vs. Them, or Blue Lives Matter vs. Black Lives Matter. For example, Craig has publicly stated: "I can tell you: Detroiters don't like it. They support this chief. They support this police department. They do not support defunding [the police]," he explained. "They know what defunding looks like." *Id.*

82.     Craig has publicly declared the official police response to protestors and demonstrators as a form of the City of Detroit's counter-speech against protesters, stating "Because of our firm stand, this department has won tremendous praise from not only our residents but also folks in metro Detroit. I get tremendous support from my colleagues across the state – and across the country – for standing up and speaking out in a bold, fearless way, that we're not putting up with this[.]"[6]

83.     Craig's public pronouncements reflect an official policy, practice, and custom maintained by the City of Detroit of instigating violence against protesters, including Plaintiff, who the City and DPD regard as being "anti-police" because the content of their protest message.

84.     This policy, practice, and custom contrasts with the City's and DPD's response to public demonstrations and disturbances that did, in fact, present a credible threat of violence, but where the City and DPD did not instigate the use of force, including:

---

[6] *Id.*

a.    The City of Detroit and DPD showing deference and restraint in dealing with a white mob of Nazis who specifically threatened and engaged in bigoted acts of violence at the 2019 Pride march in Detroit;[7]

b.    The City of Detroit showing deference and restraint in dealing with violent and aggressive protesters who disputed the results of the 2020 presidential election, even when those protesters mobbed the TCF center where election results were being counted;[8]

c.    The City of Detroit and DPD showing deference and restraint with no use of force in dealing with large crowds of spectators, many of whom are intoxicated, disorderly, and impeding traffic, while entering and leaving concerts and sporting events in Detroit.

85.    The actions of Defendant City of Detroit in authorizing the use of force by police against demonstrators, and authorizing police officers to instigate violence against demonstrators without provocation, solely for the purpose of punishing and retaliating against demonstrators for the content of their demonstrations would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the First Amendment.

---

[7] https://slate.com/news-and-politics/2019/06/armed-neo-nazis-police-escort-detroit-pride.html

[8]    https://www.fox2detroit.com/news/chief-craig-says-election-protesters-werent-treated-like-blm-protesters-because-they-were-peaceful

86.     The actions of Defendants Does 1-5 in executing those policies, practices, and customs would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the First Amendment.

87.     Through their actions of attacking, beating, and intimidating Plaintiff, Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

88.     The constitutional rights that Defendants Does 1-5 violated were clearly established at the time that the violations occurred and any reasonable individual in these Defendants' positions would have understood that their conduct violated said rights.

89.     Defendants Does 1-5 are therefore not entitled to qualified immunity.

90.     As a result of Defendants' conduct, Plaintiff has suffered damages as described in this complaint.

## COUNT V
### Article I, Sections 3 and 5 of the Michigan Constitution of 1963:
### Freedom of Speech and Right to Peaceably Assemble
### as to Defendant City of Detroit and Defendant Does 1-5

91.     Plaintiff incorporates the foregoing paragraphs by reference herein.

92.     At all relevant times, Defendants Does 1-5 acted under color of state law pursuant to the municipal policies, practices, and customs of the City of Detroit.

93.     Plaintiff did not commit any unlawful acts, including acts of violence or property damage.

94.     Defendants Does 1-5 never suspected Plaintiff of committing any unlawful acts, and these Defendants lacked probable cause to attack or detain Plaintiff.

95.     Defendant City of Detroit's policy, practice, and custom of utilizing excessive force against demonstrators for the purpose of punishing and retaliating against demonstrators for engaging in protests against police brutality, and of authorizing the use of force described herein to control and suppress demonstrations, are content-based restrictions and prior restraints of speech, and these policies, practices, and customs are not a reasonable regulations of the time, place, or manner of Plaintiff's First Amendment protected activity.

96.     The above-described conduct of Defendants Does 1-5 violated Plaintiff's rights to freedom of speech, assembly, and association under Article I, Sections 3 and 5 of the Michigan Constitution of 1963.

97.     In dispersing such assemblies, Defendants Doe 1-5 instigated violence and excessive force despite the peaceful nature of Plaintiff's actions.

98.     The conduct of Defendants Doe 1-5 would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the Michigan Constitution.

99.    Defendant City of Detroit maintains official policies, practices, and customs of instigating violence against protestors using the types of force described herein to control and suppress demonstrations, and these policies, practices, and customs are not a reasonable regulation of the time, place, or manner of Plaintiff's constitutionally protected activity.

100.   The actions of Defendants Does 1-5, which were undertaken pursuant to the policies, practices, and customs of the City of Detroit, were neither content neutral nor viewpoint neutral, and were in fact directed against Black Lives Matter protestors, including Plaintiff, because of the content of their speech activities.

101.   The City's targeted and coordinated response to the Black Lives Matter demonstrations, including the official policy, practice, and custom of instigating violence against peaceful protestors, and utilizing excessive force against protestors in order to send a message that their protests were not welcome in Detroit, is neither content nor viewpoint neutral, and is in fact based on the City's and DPD's bias towards and disagreement with the content and viewpoints expressed in the speech activities of the demonstrators', including Plaintiff's, speech activities.

102.   For example, then-DPD Chief James Craig – a frequent guest and pundit on Fox News – has publicly stated, falsely and without any factual basis, that he believes the BLM demonstrations are "coordinated…planned, and not to mention…financed," and that the demonstrators were "carrying out a mission" that

"certainly is not about Breonna Taylor; [and not] about George Floyd," but instead "a Marxist ideology."[9]

103.   Craig has further expressed his opposition to the content of the demonstrators' speech activities, stating: "I can tell you that this group that's marching, like so many across the country, the anarchist factions of these groups are promoting violence and attacks on police officers. They don't speak for Detroit," he told Townhall. "And I recognize that it's not all of the protestors it's the core, that little small group, that really tries to create violence."[10]

104.   With regard to BLM demonstrations, Craig has taken a public position of Us vs. Them, or Blue Lives Matter vs. Black Lives Matter. For example, Craig has publicly stated: "I can tell you: Detroiters don't like it. They support this chief. They support this police department. They do not support defunding [the police]," he explained. "They know what defunding looks like." *Id.*

105.   Craig has publicly declared the official police response to protestors and demonstrators as a form of the City of Detroit's counter-speech against protesters, stating "Because of our firm stand, this department has won tremendous

---

[9] See https://www.metrotimes.com/detroit/chief-craig-makes-baseless-claims-about-marxist-protesters-on-fox-news/Content?oid=25410161

[10] See https://townhall.com/tipsheet/bethbaumann/2020/09/17/exclusive-detroit-police-chief-james-craig-says-anti-law-enforcement-sentiment-i-n2576428?fbclid=IwAR2mOkdNjolDKkf9zrm0fkBd4dE8XNfKFCnjFvNy6TCZynAotR9ll0qw2Do

praise from not only our residents but also folks in metro Detroit. I get tremendous support from my colleagues across the state – and across the country – for standing up and speaking out in a bold, fearless way, that we're not putting up with this[.]"[11]

106.   Craig's public pronouncements reflect an official policy, practice, and custom maintained by the City of Detroit of instigating violence against protesters, including Plaintiff, who the City and DPD regard as being "anti-police" because the content of their protest message.

107.   This policy, practice, and custom contrasts with the City's and DPD's response to public demonstrations and disturbances that did, in fact, present a credible threat of violence, but where the City and DPD did not instigate the use of force, including:

    a.   The City of Detroit and DPD showing deference and restraint in dealing with a white mob of Nazis who specifically threatened and engaged in bigoted acts of violence at the 2019 Pride march in Detroit;[12]

    b.   The City of Detroit showing deference and restraint in dealing with violent and aggressive protesters who disputed the results of the 2020

---

[11] *Id*.
[12] https://slate.com/news-and-politics/2019/06/armed-neo-nazis-police-escort-detroit-pride.html

presidential election, even when those protesters mobbed the TCF center where election results were being counted;[13]

    c.  The City of Detroit and DPD showing deference and restraint with no use of force in dealing with large crowds of spectators, many of whom are intoxicated, disorderly, and impeding traffic, while entering and leaving concerts and sporting events in Detroit.

108.  The actions of Defendant City of Detroit in authorizing the use of force by police against demonstrators, and authorizing police officers to instigate violence against demonstrators without provocation, solely for the purpose of punishing and retaliating against demonstrators for the content of their demonstrations would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the First Amendment.

109.  The actions of Defendants Does 1-5 in executing those policies, practices, and customs would, did, and can reasonably be expected to chill and deter protesters of reasonable firmness from participating in activity protected by the Michigan Constitution.

---

[13]  https://www.fox2detroit.com/news/chief-craig-says-election-protesters-werent-treated-like-blm-protesters-because-they-were-peaceful

110. Through their actions of attacking, beating, arresting, and charging Plaintiff, Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

111. The constitutional rights that Defendants Does 1-5 violated were clearly established at the time that the violations occurred and any reasonable individual in these Defendants' positions would have understood that their conduct violated said rights.

112. Defendants Does 1-5 are therefore not entitled to qualified immunity.

113. As a result of Defendants' conduct, Plaintiff has suffered damages as described in this complaint.

## COUNT VI
### 42 U.S.C. § 1981: Retaliation
### as to Defendant City of Detroit and Officers Does 1-5

114. Plaintiff incorporates the foregoing paragraphs by reference herein.

115. Pursuant to 42 U.S.C. § 1981, Plaintiff had the right to engage in protests and demonstrations in support of Black people's rights to the full access to and equal benefit of all laws, without regard to race, and to oppose racially discriminatory police practices that violated the rights of Black people to be free from discrimination at the hands of police.

116. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when he vocalized, marched, and demonstrated in support of Black people's rights to the full

access to and equal benefit of all laws, particularly at the hands of law enforcement, and to be free from discrimination at the hands of police.

117.   Defendants Does 1-5, acting individually and pursuant to the customs, policies, and/or practices of Defendant City of Detroit, retaliated against Plaintiff for engaging in such protected activity by subjecting him to the unlawful force, arrest, and prosecution described in this lawsuit.

118.   Defendants Does 1-5, acting individually and pursuant to the official customs, polices, and/or practices of the City of Detroit, retaliated against Plaintiff by treating him and other Black Lives Matter demonstrators in a manner completely dissimilar to methods used by the Detroit Police Department in response to other peaceful demonstrations and gatherings that do not implicate the equal rights of Black people to the full and equal benefit of the law.

119.   There is no valid, non-retaliatory, or non-discriminatory explanation for the disparate treatment of Plaintiff and other demonstrators other than the fact that their message was one that specifically seeks to protect Black people in Detroit and America from the disproportionately excessive use of violence and unlawful criminal process by officers of the law.

120.   Defendants' conduct violated Plaintiff's rights under 42 U.S.C. § 1981 as enforced against Defendants through 42 U.S.C. § 1983.

121.   Defendants Does 1-5 acted intentionally and/or with deliberate indifference and/or with reckless disregard for Plaintiff's constitutional rights.

122.   The constitutional rights that Defendants violated were clearly established at the time that the violations occurred and any reasonable individual in Defendants' position would have understood that their conduct violated those rights.

123.   Defendants are therefore not entitled to qualified immunity.

124.   As a result of Defendants' conduct, Plaintiff has suffered damages as described herein.

## COUNT VII
**Assault and Battery**
**as to Defendant Officers Does 1-5**

125.   Plaintiff incorporates the foregoing paragraphs by reference herein.

126.   At all relevant times, the individual Defendants Does 1-5 were acting in the course and scope of their employment with Defendant City of Detroit.

127.   Defendants Does 1-5 intended to cause, and did cause, harmful and offensive contact with Plaintiff and acted intentionally in that they intended to commit an assault and battery or should have been substantially certain that an assault and battery would result from their conduct.

128.   The conduct of Defendants Does 1-5 conduct was unreasonable, outrageous, willful, wanton, malicious, oppressive, and not undertaken in good faith, justifying an award of punitive damages and other exemplary damages.

129. Defendant Does 1-5 acted in bad faith and with malice and accordingly are not entitled to governmental immunity.

130. Defendant City of Detroit is vicariously liable for the conduct of its employees and/or agents by virtue of *respondeat superior* and directly liable by virtue of its failure to train and supervise its employees.

131. As a result of the actions of Defendants Does 1-5, Plaintiff has suffered damages as described in this complaint.

**COUNT VIII**
**Intentional Infliction of Emotional Distress**
**as to Defendant Officers Does 1-5**

132. Plaintiff incorporates the foregoing paragraphs by reference herein.

133. At all relevant times, the individual Defendants Does 1-5 were acting in the course and scope of their employment with Defendant City of Detroit.

134. Defendants Does 1-5 intended to cause, and did cause, emotional distress, and acted intentionally in that they intended to inflict emotional distress or should have been substantially certain that emotional distress would result from their conduct.

135. The conduct of Defendants Does 1-5 conduct was extreme, unreasonable, outrageous, willful, wanton, malicious, and oppressive, justifying an award of punitive damages and other exemplary damages.

136.   Defendant Does 1-5 acted in bad faith and with malice and accordingly are not entitled to governmental immunity.

137.   Defendant City of Detroit is vicariously liable for the conduct of its employees and/or agents by virtue of *respondeat superior* and directly liable by virtue of its failure to train and supervise its employees.

138.   As a result of the actions of Defendants Does 1-5, Plaintiff has suffered damages as described in this complaint.

## COUNT IV
### *Monell* Liability
### 42 U.S.C. 1983
### as to Defendant City of Detroit

139.   Plaintiff incorporates the foregoing paragraphs by reference herein.

140.   At all relevant times, Defendant City of Detroit, through its Police Department, supervisors, and/or policymakers, maintained a custom, policy, and/or practice of deploying chemical weapons, including pepper spray, against demonstrators without warning or justification; arresting demonstrators without probable cause, detaining demonstrators in unlawful and unreasonable conditions, instigating violence against protestors without provocation or justification, and using excessive physical force to beat demonstrators, including Plaintiff.

141.   Defendant City of Detroit was on actual notice that its police officers, including the individual Defendants Does 1-5, engaged in the above-listed practices, and thereby condoned and acquiesced in the officers' unconstitutional conduct.

32

142.   Defendant City of Detroit implemented an official policy, practice, and custom of punishing and retaliating against demonstrators for engaging in protests against police brutality, and of authorizing the use of force described herein to control and suppress demonstrations.

143.   The individual Defendants' conduct was committed pursuant to the customs, policies, and/or practices of Defendant City of Detroit.

144.   As a result of Defendants' conduct, Plaintiff has suffered damages as described herein.

## DAMAGES

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered injuries and damages, past and future, including but not limited to: pain and suffering; mental anguish and distress; loss of enjoyment of life and social activities; loss of liberty; deprivation of civil rights; fear and anxiety; medical expenses; loss of work, career opportunity, and earning capacity.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Julian Cruz requests that this Court:

A.     Declare that the aforementioned practices of Defendants constitute unlawful violations of Plaintiff's constitutional and statutory rights;

B.     Award Plaintiff compensatory damages;

C.     Award Plaintiff punitive damages;

D.   Award Plaintiff reasonable attorney's fees, costs, and interest; and

E.   Award such other relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Amanda M. Ghannam*

Amanda M. Ghannam (P83065)
Nacht & Roumel, P.C.
2921 E. Jefferson Ave., Ste. 102
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com

Dated: December 1, 2022

34

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIAN CRUZ,

                                   Case No.
        Plaintiff,                   Hon.

v.

CITY OF DETROIT, a municipal corporation,
and JOHN DOE OFFICERS 1-5, in their individual
capacities,

        Defendants.

---

Amanda M. Ghannam (P83065)
Nicholas Roumel (P37056)
Nacht & Roumel, P.C.
2921 E. Jefferson Ave., Ste. 102
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com
nroumel@nachtlaw.com
Co-Counsel for Plaintiff

Sean Riddell (P81302)
The Riddell Law Firm PLLC
400 Renaissance Center, Ste. 2600
Detroit, MI 48243
(313) 497-0074
sriddell@riddelllawfirm.com
Co-Counsel for Plaintiff

---

**<u>PLAINTIFF'S JURY DEMAND</u>**

Plaintiff Julian Cruz hereby demands a trial by jury in the above-captioned cause of action on all issues so triable.

Respectfully submitted,

*/s/ Amanda M. Ghannam*

Amanda M. Ghannam (P83065)
Nacht & Roumel, P.C.
2921 E. Jefferson Ave., Ste. 102
Detroit, MI 48207
(734) 663-7550
aghannam@nachtlaw.com

Dated: December 1, 2022